UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

BLACK WATER MANAGEMENT LLC,

                                Plaintiff,

v.                                           Civil Action No. 3:15-CV-365

MARK D. SPRENKLE, *et al.*,

                                Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") (ECF No. 8), filed by Defendant Steve Vorlop ("Vorlop"). Plaintiff filed a response in opposition on August 13, 2015 ("Opp'n Mem.") (ECF No. 13). Vorlop subsequently filed a reply on August 19, 2015 ("Reply Mem.") (ECF No. 14). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. *See* E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court DENIES the Motion.

**I.    BACKGROUND**

    **a.  *Factual Background***

This action arises from an alleged agreement between Jacob A. Schur ("Schur") and Defendant Mark D. Sprenkle ("Sprenkle") to establish Blackwater Management LLC ("BWM LLC" or the "Company" or "Plaintiff"), a talent management company specializing in representing musical talent. On June 19, 2008, Schur and Sprenkle signed[1] the Operating Agreement for BWM LLC (hereinafter, the "Operating Agreement").[2] To gain ownership rights in BWM LLC, the agreement required Schur to invest $34,675.00 in cash and Sprenkle to assign two management contracts, one with Jesse Harper and one with Colin Healy and the Jet Skis.

---

[1] Schur allegedly drafted the Operating Agreement himself.
[2] The Operating Agreement is attached to Plaintiff's Complaint as Exhibit A.

1

(*See* Operating agreement, Ex. A.) Schur made an initial investment of $49,675.00. Sprenkle, however, allegedly failed to assign any contracts to the Company. Contrary to what he told Schur, Sprenkle had no artist management contracts to assign and he actively concealed the nonexistence of these contracts from Schur.

Sprenkle allegedly did not care whether he had an ownership interest in BWM LLC, nor was he concerned with the success of BWM LLC. Instead, he wanted BWM LLC to "bankroll" his expenses. Sprenkle also allegedly planned to exploit for his benefit any business opportunities made available through his affiliation with Schur and BWM LLC. Sprenkle convinced the other defendants to aid him in his efforts.

Schur brought actions in state court in his personal capacity against Sprenkle and the other defendants to discover the truth and recover the significant damages caused by the conspirator's acts and omissions. Schur learned through the testimony of the artists with whom Sprenkle claimed to have management contracts that Sprenkle never possessed rights in any artist management contract at the time he purported to assign those contracts to BWM LLC.

### b. *Procedural Background*

Plaintiff filed the present action on June 16, 2015 "to vindicate its rights against these Defendants who conspired and colluded to strip it of its assets and destroy its contractual relationships and business expectancies." (ECF No. 1, "Complaint," at ¶ 6.) The seven-count Complaint names the following nine defendants: Sprenkle; Colin Healy[3]; Kevin Healy; TBT Network LLC d/b/a Tim Be Told, Timothy Ouyang ("Ouyang")[4], Luan Nguyen ("Nguyen")[5], Jacob James "Jim" Carisma Barredo ("Barredo")[6], Andrew Daniel Chae ("Chae")[7] (individually and collectively, "TBT"); and Vorlop[8]. The Complaint alleges: (1) Declaratory Judgment (Against

---

[3] Colin Healy is a musician and was at one time the "front man" of the rock band Colin Healy & the Jetskis.
[4] Ouyang is a musician and the front man of the band TBT.
[5] Nguyen was a guitarist with TBT.
[6] Barredo was the drummer of TBT.
[7] Chae is a guitarist with TBT.
[8] Vorlop is a friend of TBT who was serving as their road manager.

Sprenkle) (Count One); (2) Conspiracy to Tortiously Interfere With Contract and/or Business Expectancies (All Defendants) (Count Two); (3) Conspiracy to Breach Fiduciary Duties (All Defendants) (Count Three); (4) Conspiracy to Convert Assets of BMW LLC (All Defendants) (Count Four); (5) Conversion (Against Sprenkle) (Count Five); (6) Breach of Contract (Against TBT and Colin Healy) (Count Six); and (7) Accounting (Against TBT, Colin Healy, and Sprenkle) (Count Seven).

Defendant Steve Vorlop ("Vorlop") was served on July 9, 2015. (ECF No. 6). He then timely filed the present Motion on July 30, 2015, seeking to dismiss the action for lack of subject matter jurisdiction.[9]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action. The Court must dismiss the action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Under Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction exists in federal court. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard to the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted). The Court should apply the same standard as it does in a motion for summary judgment: "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). The district court must then weigh the evidence to determine whether jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A court should grant a Rule 12(b)(1) motion to dismiss if the material

---

[9] The remaining Defendants, except Sprenkle, executed waivers of service. (ECF No. 11.) Their respective responses to the Complaint are due on August 31, 2015. (*Id.*)

jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

### III. DISCUSSION

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For example, federal district courts have original jurisdiction pursuant to 28 U.S.C. § 1332 over civil actions where the amount in controversy exceeds $75,000 and the matter is between citizens of different states, also known as "diversity jurisdiction." In order to maintain an action based upon diversity jurisdiction, complete diversity between the plaintiffs and defendants must exist at the time the complaint is filed. *Martinez v. Duke Energy Corp.*, 130 F. App'x 629, 634 (4th Cir. 2005). "Complete diversity" means "that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citation omitted). For purposes of determining citizenship, a natural person is deemed a citizen of the State in which he or she is domiciled, *see Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998), while the citizenship of a limited liability company is determined by the citizenship of all of its members, *Cent. W. Va. Energy Co., Inc.*, 636 F.3d at 103.

Here, Plaintiff brings this action pursuant to 28 U.S.C. § 1332, claiming there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000. (Compl. at ¶ 9.) Plaintiff defines the citizenship of each of the parties as follows:

- BWM LLC: "[A]n unincorporated entity organized under the laws of the Commonwealth of Virginia." (*Id.* at ¶ 11.)

- Schur: A resident of Colorado. (*Id.* at ¶ 12.)[10]

- Sprenkle: A resident of the Commonwealth of Virginia. (*Id.* at ¶ 13.)

---

[10] Vorlop notes that he contests Schur's citizenship as a complaint filed in the Circuit Court of the City of Richmond lists Schur's address in Alexandria, Virginia, and he alleges he is a resident of Fairfax County, Virginia. However, because Schur's citizenship status is irrelevant to deciding the instant Motion, Vorlop accepts Schur's citizenship allegations. (*See* Mem. in Supp. of Mot. at 2.)

4

- Colin Healy: A resident of the Commonwealth of Virginia. (*Id.* at ¶ 14.)

- Kevin Healy: A resident of the Commonwealth of Virginia. (*Id.* at ¶ 15.)

- Ouyang: A resident of California. (*Id.* at 16.)

- Nguyen: A resident of the Commonwealth of Virginia. (*Id.* at ¶ 17.)

- Barredo: A resident of Washington, D.C. (*Id.* at ¶ 18.)

- Chae: A resident of California. (*Id.* at ¶ 19.)

- Vorlop: A resident of the Commonwealth of Virginia. (*Id.* at ¶ 20.)

Plaintiff alleges that Schur is the sole member of BWM LLC. (*Id.* at ¶ 12.) If this allegation is true, then complete diversity exists as BWM LLC will be deemed a citizen of Colorado. *See Cent. W. Va. Energy Co., Inc.*, 636 F.3d at 103. However, Vorlop argues that Schur is not the only member of BWM LLC. Instead Vorlop contends that both Schur and Sprenkle were and are members. If the evidence supports Vorlop's allegations, and Sprenkle is a member of BWM LLC, then BMW LLC will be considered a citizen of both Colorado and Virginia, destroying complete diversity among the parties. Thus, the Court must determine if Sprenkle is a member of BWM LLC.

(i) *Plain Language of the Operating Agreement*

In making this determination, the Court will begin with the plain language of the Operating Agreement. *See Am. Spirit Ins. Co. v. Owens*, 541 S.E.2d 553, 555 (Va. 2001) (citation omitted) ("[W]here the terms of the contract are clear and unambiguous, we will construe those terms according to their plain meaning."). Specifically, the Court should first determine whether the plain language conditions membership in BWM LLC upon making the contributions listed in Exhibit A to the Operating Agreement. Plaintiff argues that the plain language of the Operating Agreement (as well as Virginia precedent) command the conclusion that Sprenkle was required to make a "mandatory initial contribution" in order to become a member of BWM LLC. (*See* Opp'n Mem. at 5.) Because Sprenkle allegedly failed to make his contribution, he never acquired

an ownership interest in BWM LLC. (*See* Compl. at ¶ 87) (citing Va. Code § 13.1-1038.1[11]). Vorlop, on the other hand, argues that there is no language in the Operating Agreement that makes the promised contributions a "condition to membership." (Mem. in Supp. of Mot. at 5.) The Court will address each of the relevant provisions of the Operating Agreement that are raised by the parties in their pleadings.

(1) Paragraph 2.1 of the Operating Agreement

Paragraph 2.1 of the Operating Agreement notes, "The initial capital and interest in artists to be contributed by the Managing Members is evidenced by EXHIBIT 'A' and shall not exceed that amount." (Operating Agreement at ¶ 2.1.) Exhibit A lists Sprenkle and Schur as Managing Members. (*Id.* at Ex. A.) Sprenkle's contribution is listed as follows: Jesse Harper, Colin Healy and the Jet Skis, 50.00% Management of Old School Freight Train. (*Id.*) Sprenkle's "percentage of membership interest" is listed as 50.00%. (*Id.*)

Plaintiff interprets paragraph 2.1 and Exhibit A of the Operating Agreement as meaning that "*the initial capital to be contributed* by Sprenkle *in exchange* for his 50% interest were the Artist Contracts he claimed to have prior to the execution of the Operating Agreement." (Opp'n Mem. at 6) (second emphasis added). "Thus, [Plaintiff argues,] the language of the Operating Agreement expresses a mandatory requirement . . . that Sprenkle make an initial capital contribution *to obtain* his stated 50% interest as a managing member." (*Id.*) (emphasis added). Plaintiff highlights the auxiliary verb "to be," and argues that such verb establishes a mandatory obligation upon Sprenkle. (*Id.* at 6–7.) However, the Court disagrees with Plaintiff's interpretation.

Contrary to Plaintiff's argument, paragraph 2.1 does not "establish[] a mandatory obligation that Sprenkle assign the Artist Contracts listed in Exhibit A *as consideration for his defined membership interest.*" (Opp'n Mem. at 6–7) (emphasis added). In other words, while

---

[11] Va. Code § 13.1-1038.1(A)(1) states: "[A] person may become a member in a limited liability company . . . in the case of a person acquiring a membership interest directly from the limited liability company, *upon compliance with an operating agreement . . . .*" (emphasis added).

6

the Operating Agreement may be read as requiring each Managing Member to make the contributions listed in Exhibit A, the Operating Agreement does not condition the Managing Members' membership interest on such contributions.

If the parties wished to condition membership in BWM LLC upon the defined contributions, the parties should have so stated in the Operating Agreement. *See Chaudhary v. Broad*, 60 Va. Cir. 128, 2002 WL 1831990, at *2 (Va. Cir. Ct. July 25, 2002) ("The clear language of the Operating Agreements require[d] as a condition of membership the payment of the $50,000 . . . contribution.")[12]; *see also* 1 RIBSTEIN AND KEATINGE ON LTD. LIAB. COS. § 5.7 (June 2015) ("One who fails to make an agreed contribution nevertheless is a member unless the agreement provides otherwise."). For example, in *McDonald v. Miller*, No. 00AP-994, 2001 WL 300736 (Ohio Ct. App. Mar. 29, 2001), the operating agreement for a limited liability company provided that "[e]ach Member shall contribute $5,000 as the initial Capital Contribution." *Id.* at *1. Appellee claimed that the $5,000 capital contribution was a mandatory condition precedent to membership. *Id.* at *2. Appellant admitted that he did not make the $5,000 capital contribution. *Id.* Thus, the Court faced "[t]he narrow issue . . . [of] whether appellant was a member of [the limited liability company]." *Id.* at *4. The Court first noted that appellant was listed as a member of the limited liability company. *Id.* ("Article III, Section I states that '[t]he names and addresses of the Members are as follows . . . .'"). The Court then stated:

> The phrase 'each Member shall contribute $5,000' presupposes that the person contributing the $5,000 is already a member. If the intent of this provision was

---

[12] Plaintiff asserts that "[t]he reasoning of *Chaudhary* fits this case to a T" in part because "[t]he Operating Agreement [like the one in *Chaudhary*] contains a mandatory term requiring an initial contribution of Sprenkle's 'interest in artists.'" (Opp'n Mem. at 10.) However, the operating agreement in *Chaudhary* explicitly conditioned membership upon payment of a capital contribution. *See* 2002 WL 1831990, at *1–2 ("Each member hereby acknowledges that he has irrevocably subscribed for the issuance and sale of a Membership Interest . . . upon the terms and conditions and in consideration of the capital contributions specified in this Agreement."). No such explicit condition exists here.

In addition, Plaintiff cites *Flores v. Murray*, 2007 WL 3034512 (N.J. Super. Ct. App. Div. Oct. 19, 2007) in support of its argument that because Sprenkle failed to make the required contribution, he never became a member of BWM LLC. (*See* Opp'n Mem. at 10.) However, the operating agreement in *Flores* "personally obligate[d] defendant to 'contribute the $200,000 investment within a six month period ending in March of 2004 or forfeit his shares and ownership in [the limited liability company].'" *Id.* at *10. No similar provision exists in the Operating Agreement presently at issue.

>to make membership conditional upon the payment of $5,000, it is not apparent from the plain language of the document. Additionally, there is no time requirement designated in the agreement when a member is required to make the capital contribution.

*Id.* The Court concluded that the plain language of the operating agreement established that appellant was a member of the limited liability company at some point in time. *Id.*

Similar to the operating agreement in *McDonald*, the Operating Agreement in the present case first lists Sprenkle and Schur as Managing Members of BWM LLC. (*See* Operating Agreement at ¶ 1.1.) ("The Managing Members, as listed on EXIHIBIT 'A' attached hereto, hereby form a limited liability company named Black Water Management LLC . . . under and pursuant to the laws of the Commonwealth of Virginia."). The Operating Agreement then requires the Managing Members to provide the initial capital and interest in artists as defined in Exhibit A. (*Id.* at ¶ 2.1.) The Operating Agreement thus "presupposes" that the person making the initial contributions is already a member. Moreover, like *McDonald*, the Operating Agreement here does not designate when a member is required to make these contributions. Thus, paragraph 2.1 does not sustain Vorlop's argument in support of his Motion to Dismiss. To the contrary, this section of the Operating Agreement supports the conclusion that Sprenkle was, at least at some point, a member of BWM LLC.

(2) Paragraph 2.4 of the Operating Agreement

Next, Vorlop highlights paragraph 2.4 of the Operating Agreement. To understand this paragraph of the Operating Agreement, the Court must note the full context in which it lies. Article II of the Operating Agreement notes, in part:

>Contributions and Distributions
>
>2.1 The initial capital and interest in artists to be contributed by the Managing Members is evidenced by EXHIBIT 'A' and shall not exceed that amount . . . .
>
>2.2 Additional capital contributions may be required as determined by the Managing Members from time to time.

8

   2.3 A promise by a Member[13] to make a contribution to the Company must be set out in writing and signed by the Member.

   2.4 A Member or a Member's representative or successor is obligated to make the contributions outlined above notwithstanding the Member's death, disability, or other changes in circumstances.

   2.5 The membership interests in the Company shall be as listed on EXHIBIT 'A' attached hereto.

Based on the language set forth in paragraph 2.4, Vorlop argues that "[i]f the alleged failure of Sprenkle to make the contribution were [sic] ipso facto fatal to his membership status, he could have no successor and there would be no reason to impose contribution liability on the successor to his membership interest." (Mem. in Supp of Mot. at 5.) In response, Plaintiff contends that Vorlop's "assertion lacks all merit because paragraph 2.4 does not speak to the *initial contributions* of the *Managing Members*," but rather "relates to '[a]*dditional capital contributions*' that '*may be required [of all Members] by the Managing Members from time to time*.'" (Opp'n Mem. at 8) (citing Operating Agreement at ¶ 2.2).

Based on the Court's reading, paragraph 2.4 is hopelessly vague. It simply refers to "the contributions outlined above," which could implicate either the initial contributions in paragraph 2.1 or the additional capital contributions in paragraph 2.2. Thus, paragraph 2.4 fails to provide the best support for either party's argument.

(3) <u>Paragraph 12.9 of the Operating Agreement</u>

In its opposition, Plaintiff highlights paragraph 12.9 of the Operating Agreement, which states: "A capital contribution by a Member in proportion to his membership interest will ensure that the Member retains his proportion of ownership in the Company. In the event a Member cannot or chooses not to contribute capital in proportion to his membership interest, his proportional membership interest shall be reduced to reflect the amount of capital he actually contributed." (Operating Agreement at ¶ 12.9.) Plaintiff argues that the plain language of that

---

[13] Paragraph 5.1 of the Operating Agreement notes that there shall be two classes of Members in BWM LLC: (1) Managing Members, and (2) Non-Managing Members. The term "Members" as used throughout the Operating Agreement "shall include both Non-Managing Members and Managing Members." (Operating Agreement at ¶ 5.1)

paragraph makes "a Member's interest . . . *contingent upon* and in direct proportion to the capital contributed by the LLC's Members." (Opp'n Mem. at 9.) While the Court agrees that a member's interest will be in direct proportion to his contribution, the Court does not believe that the plain language of the Operating Agreement *conditions* membership upon the noted contributions. Rather, again, this paragraph appears to presuppose that such person is already a member of BWM LLC.

This conclusion is bolstered by Virginia law. Virginia Code § 13.1-1023.1 mirrors the intent of paragraph 12.9 of the Operating Agreement. The Code provides that "[a] member or manager who fails to perform in accordance with, or to comply with terms and conditions of, the operating agreement shall be subject to specified penalties or specified consequences . . . set forth in subsection D of § 13.1-1027." Va. Code § 13.1-1023.1(A)(1). Virginia Code § 13.1-1027(D) states in turn that "an operating agreement may provide in writing that the interest of any member who fails to make any contribution that he is obligated to make shall be subject to specific penalties for, or specified consequences of, such failure," including "*reducing or eliminating the defaulting member's proportionate interest in a limited liability company*." Va. Code § 13.1-1027(D) (emphasis added). Thus, paragraph 12.9 of the operating agreement sets forth a potential remedy for breach of an operating agreement–not a condition precedent to obtaining membership.

Based on the foregoing three provisions, the plain language of the Operating Agreement establishes that both Schur and Sprenkle were, at some point, members of BWM LLC. *See McDonald*, 2001 WL 300736, at *4. However, that being said, Plaintiff alleges that Sprenkle contributed absolutely no capital to the Company. (*See* Compl. at ¶ 37; Opp'n Mem. at 9.) Assuming *arguendo* that Plaintiff's allegation is true, then Sprenkle's proportional membership interest could be reduced to zero percent to reflect the amount of capital he actually contributed. (*See* Operating Agreement at ¶ 12.9; Opp'n Mem. at 9.) Vorlop, as a "non-member" of BWM LLC, recognizes that he "lacks the knowledge of whether either Mr. Sprenkle or Mr. Schur

performed their capital obligations to the Company." (Reply Mem. at 7–8.) Thus, the Court lacks sufficient evidence to know whether Sprenkle ever contributed as required by the Operating Agreement. The Court, therefore, is left guessing at whether Sprenkle was a member of BWM LLC at the time the Complaint was filed. *See Rowland v. Patterson*, 852 F.2d 108, 112 (4th Cir. 1988) (citing cases) ("[D]iversity of citizenship is determined with reference to the date on which a complaint is filed in federal court."). Because material jurisdictional facts are unknown at this point in time, the Court must deny Vorlop's Motion. *See Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

      (ii)      *Extrinsic Evidence*

Besides the plain language of the Operating Agreement, Vorlop also presents extrinsic evidence in support of his argument. (Mem. in Supp. of Mot. at 5–9.) But Plaintiff argues that all Vorlop's "proof" is irrelevant. (Opp'n Mem. at 11.)

  (1)  Registered Agent

First, Vorlop notes that the Operating Agreement makes Sprenkle a registered agent of the Company. And "even as of [the date of the Motion's] filing, Mr. Sprenkle remains registered agent of record for the company." (Mem. in Supp. of Mot. at 7, Ex. H.) Vorlop argues that under Virginia law, Sprenkle could not have held that capacity if he were not a member of BWM LLC. (*Id.* at 5.) But Plaintiff contends that "[a] representation in a document that one is a registered agent does not grant one the necessary qualifications to hold validly the position of registered agent." (Opp'n Mem. at 12.)

Virginia Code § 13.1-1015 requires that each limited liability company continuously maintain a registered agent, who is either "a member *or* manager of the limited liability company." Va. Code § 13.1-1015(A)(2)(a) (emphasis added). The Code defines a manager as "a person . . . designated by the members of a limited liability company to manage the limited liability company as provided in the . . . operating agreement." Va. Code § 13.1-1002. The Code then separately defines a "member" as "a person that has been admitted to membership in a

11

limited liability company as provided in § 13.1-1038.1 and that has not ceased to be a member." *Id.* Thus, as Plaintiff argues, Sprenkle could validly qualify to serve as a registered agent if he established himself as a "manager" of the Company, without necessarily being a member of the Company. (*See* Opp'n Mem. at 12 n.3.) Therefore, the fact that Sprenkle is noted as BWM LLC's registered agent is of no consequence in the present Motion.

(2) <u>Organizer</u>

Next, Vorlop highlights that Sprenkle is listed as the organizer of the Company per the records of the Virginia State Corporation Commission. (Mem. in Supp. of Mot. at 6, Ex. E.) The Virginia Code provides that "[o]ne or more persons may act as organizers of a limited liability company by signing and filing articles of organization with the Commission. Such person or persons *need not be members of the limited liability company after formation has occurred*." Va. Code § 13.1-1010 (emphasis added). Thus, Sprenkle's status as an organizer clearly fails to resolve the present issue.

(3) <u>Additional Documents</u>

Vorlop further attaches a limited liability company resolution for First Market Bank, which was jointly executed by Sprenkle and Schur. (Mem. in Supp. of Mot. at 6, Ex. F.) He also attaches the 2008 Blackwater Management U.S. Return of Partnership Income, Form 1065, which notes that Sprenkle and Schur each own 50% of BWM LLC. (*See id.* at 6, Ex. G at p.2.) But, again, this extrinsic evidence does not answer the question of whether Sprenkle was a member of the Company at the time the Complaint was filed. *See Rowland*, 852 F.2d at 112.

(4) <u>State Court Litigation</u>

Finally, the parties ardently contest the relevance of prior state court litigation. As background, Schur, proceeding *pro se*, filed suit in Richmond Circuit Court against Sprenkle, TBT, and others to discover the truth and recover damages allegedly caused by the conspirator's acts and omissions. (*See* Compl. at ¶ 4; Opp'n Mem. at 3.) Sprenkle later countersued Schur in Henrico Circuit Court. (Opp'n Mem. at 3.)

In his present Motion, Vorlop highlights the fact that Schur previously claimed he was never a member of BWM LLC. (*See* Mem. in Supp. of Mot. at Ex. D, at ¶ 11.)[14] But, as Plaintiff notes, "the positions Schur took in earlier litigation regarding his membership interest in BWM [LLC] have no bearing in this action brought by BWM [LLC] because Vorlop admits that Schur is a member of BWM [LLC]." (Opp'n Mem. at 14) (citing Mem. in Supp. of Mot. at 9). The Court finds Vorlop's argument regarding the prior state court litigation entirely irrelevant in deciding whether Sprenkle is a member of the Company.

## IV. CONCLUSION

For the foregoing reasons, Vorlop's Motion is DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

/s/
James R. Spencer
Senior U. S. District Judge

ENTERED this   27th   day of August 2015.

---

[14] The Richmond Circuit Court, however, concluded that "[t]here is no question that [Schur] and [Sprenkle] were legally associated; the Operating Agreement signed by both parties show[s] their legal association." (Opp'n Mem. at Ex. 7.)